USCA1 Opinion

 

 April 30, 1993 [SYSTEMS NOTE: This appendix is only available through the Clerk's Office in Boston.] UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 91-1323 THERESA H. WOOD, Plaintiff, Appellee, v. UNITED STATES OF AMERICA, Defendant, Appellee. ____________________ CHARLES D. OWENS, Defendant, Appellant. _____________________ No. 91-1324 THERESA H. WOOD, Plaintiff, Appellee, v. UNITED STATES OF AMERICA, Defendant, Appellant. ____________________ ERRATA SHEET Please make the following correction in the opinion in the above case release on April 28, 1993: The following two-page Appendix (Excepts from the Federal Tort Claims Act, 28 U.S.C. 1346, et. seq.) should be affixed to the end of the opinion. UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 91-1323 THERESA H. WOOD, Plaintiff, Appellee, v. UNITED STATES OF AMERICA, Defendant, Appellee. ____________________ CHARLES D. OWENS, Defendant, Appellant. _____________________ No. 91-1324 THERESA H. WOOD, Plaintiff, Appellee, v. UNITED STATES OF AMERICA, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Walter Jay Skinner, U.S. District Judge] ___________________ __________________ Before Breyer, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ Torruella, Selya, Cyr, Boudin, and Stahl, Circuit Judges. ______________ ____________________ Mark W. Pennak, Attorney, Appellate Staff, Civil Division, _______________ Department of Justice, with whom Stuart M. Gerson, Assistant _________________ Attorney General, Wayne A. Budd, United States Attorney, and _______________ Barbara L. Herwig, Attorney, Appellate Staff, Civil Division, __________________ Department of Justice, were on brief for appellants. Stuart DeBard for appellee. _____________ ____________________ April 28, 1993 ____________________ OPINION EN BANC ____________________ BREYER, Chief Judge. The Westfall Act provides a ___________ federal employee with immunity from an ordinary tort suit if __ the suit arises out of acts performed "within the scope of" the defendant employee's "office or employment." The immunity attaches when the Attorney General files with the court a certificate stating that the defendant employee was acting within ______ the scope of his office or employment at __ the time of the incident out of which ________________________________________ the claim arose. ________________ 28 U.S.C. 2679(d)(1) (emphasis added). Upon filing this certificate, the Attorney General can remove the case to federal court (if it started in state court), substitute the United States as defendant, and, effectively, immunize the employee from any personal liability. 28 U.S.C. 2679(d). This appeal focuses on whether the Attorney General may issue a Westfall Act certificate that simply denies that any injury-causing action occurred. Suppose a plaintiff claims that a federal employee committed acts clearly outside the scope of employment, as here, where the plaintiff has alleged sexual harassment amounting to "assault and battery." Can the Attorney General certify that there simply was no such event? To rephrase this question using the statutory terms underlined above: Can the certificate grant immunity simply by denying the occurrence -4- of any "incident out of which the claim arose?" Would such a certificate fall within the scope of the immunity statute? The legal question is important, for, where a plaintiff alleges a serious intentional tort, say assault or rape, and also presents enough evidence to survive a summary judgment motion, the answer will affect the plaintiff's right to a jury trial. A "yes" answer means that the Attorney General and the trial judge (reviewing the certificate) will decide whether or not the alleged assault occurred. A "no" answer reserves the basic factual issues for a jury, in effect, maintaining the plaintiff's Seventh Amendment right to a trial by jury in "Suits at common law." U.S. Const. amend. VII. In our view, the answer is "no." This "no" answer finds support in the statutory language, read together with related provisions; the legislative history; the relevant case law background; and direct precedent from other circuits. We find nothing to suggest that Congress intended a contrary result. We therefore conclude that the Westfall Act certificate cannot deny the basic "incident" charged, though (as we shall explain in Part III) the certificate need not accept the plaintiff's version of just how it ___ -5- occurred. I Background __________ Theresa Wood, the plaintiff, worked as secretary to the federal employee defendant, Charles Owens, an Army Major. She filed a federal court complaint against the United States and Major Owens. The complaint alleges that in October 1987 Major Owens told Mrs. Wood that he wanted to go to a hotel with her; that later in 1987 he called her into his office, "grabbed her arm, pulled her toward him, caressed her arm, took lint from her blouse and said, 'I like you, I like you a lot and I want to be intimate with you;'" that in January 1988, he told her that he "would like to have a relationship together -- a sexual one;" and that in February 1988 he told her that she was not right for the job and would have to leave. Eventually, for reasons not here relevant, the district court dismissed the complaint insofar as it charged violations by the United States of various specified provisions of federal and state law. The complaint, however, also set forth state law claims of assault and battery, and civil rights violations against Major Owens. See Mass. Gen. L. ch. 12, 11I. The district ___ -6- court did not dismiss these state law claims, over which it retained diversity jurisdiction. 28 U.S.C. 1332. The United States Attorney then filed (in what had become a state law, diversity action) a Westfall Act certificate. See 28 C.F.R. 15.3 (delegating Attorney ___ General's certification authority to the United States Attorney). It said that Owens, "at all times referenced in the . . . Complaint," was "acting within the scope of his office as a commissioned officer of the Armed forces of the United States." In an accompanying affidavit, Owens simply denied Wood's factual allegations. He said, I never spoke in a sexually suggestive manner to plaintiff nor did I at any time ever proposition or otherwise make any sexual advances towards plaintiff. The United States Attorney, denying that any relevant incident had occurred, asked the court to substitute the United States for Owens as defendant, 28 U.S.C. 2679(d)(1), and (because of federal preemption of state civil rights law and a special law preserving sovereign immunity for intentional torts) to dismiss the resulting claims against the United States. See 42 U.S.C. 2000e-16; ___ 28 U.S.C. 2680(h). The district court would not permit the substitution because it believed the Westfall Act -7- certificate was inadequate. It pointed out that the complaint alleged facts, which (if true) showed Owens' _______ actions fell outside his "scope of office or employment." See 28 U.S.C. 2671 (defining "scope of office or ___ employment" to mean a military officer's "line of duty"); Lutz v. United States, 685 F.2d 1178, 1182 (9th Cir. 1982) ____ _____________ ("line of duty" is defined by the relevant state's law of respondeat superior); Miller v. Federated Dep't Stores, ____________________ ______ ________________________ Inc., 364 Mass. 340, 348, 304 N.E.2d 573, 579 (1973) ____ (Massachusetts law of respondeat superior places intentional ___________________ tort outside line of duty, or scope of employment, unless _______ committed to stop victim's interfering with employee's job performance); Doe v. United States, 618 F. Supp. 503, 505-06 ___ _____________ (D.S.C. 1984) (sexual harassment outside the line of duty), aff'd, 769 F.2d 174 (4th Cir. 1985); Turner v. United _____ ______ ______ States, 595 F. Supp. 708, 710 (W.D. La. 1984) (same). And, ______ the court added, the government did not deny that the acts would have fallen outside the "scope of employment" had they occurred. On appeal, a panel of this court affirmed the district court, for similar reasons. Sitting en banc, we, too, affirm the district court's determination, but for somewhat different reasons. -8- II Denying the "Incident" ______________________ Congress did not directly consider the question before us: whether or not the Attorney General's certificate can simply deny that any "incident" occurred. The statute's language, history, and precedent, however, convince us that the certificate cannot deny the occurrence of the basic incident charged. A The Statute Itself __________________ 1. The Provision's Language. The Westfall Act _________________________ itself says that, to provide immunity, the Attorney General must certify that the defendant employee was "acting within ______ the scope of his office or employment at the time of the ___________________ incident out of which the claim arose." 28 U.S.C. ________ 2679(d)(1). The dissent reads these words as permitting the Attorney General to obtain immunity for any alleged ___ working-hour tort simply by denying that anything unusual occurred "at the time." But, it seems to us more natural to ___________ read these words as speaking of an action "at the time of ______ __ the incident," thus assuming some kind of "incident" _____________ occurred. After all, the basic point of immunity doctrine is -9- to provide government employees with a defense for conduct that falls into certain categories. See, e.g., Barr v. ___ ____ ____ Matteo, 360 U.S. 564, 573-74 (1959); Mitchell v. Forsyth, ______ ________ _______ 472 U.S. 511, 525 (1985); Harlow v. Fitzgerald, 457 U.S. ______ __________ 800, 818 (1982). The doctrine normally comes into play, not when the defendant denies the conduct charged, but when the defendant asks a court to characterize the conduct. The ____________ point of the certificate is to assert such a characterization, namely to claim that a (hypothetically conceded) "incident" involved activity that was "within the scope of employment." 2. The Statutory Scheme. The surrounding ______________________ statutory provisions support our natural reading of the provision's language, for they reveal that Congress intended the Westfall Act to immunize employees from claims of wrongdoing of a particular type, not claims of wrongdoing at ____ a particular time. The "type" consists of the sort of ____ wrongdoing for which employers, typically, are vicariously liable under principles of respondeat superior. The _____________________ statutory scheme does not concern claimed wrongdoing that falls outside respondeat superior's traditional bounds, ____________________ regardless of when the wrongdoing allegedly occurred. ____ The statutory scheme involves both the Federal ____ -10- Tort Claims Act's waiver of sovereign immunity and the Westfall Act's creation of employee immunity. The waiver enables tort plaintiffs to bring against a special employer, namely the federal government, the same kind of ordinary ___________________ tort action that plaintiffs often bring against private _______ employers, namely an action claiming that an employee wrongfully hurt the plaintiff and that the employer is liable under the doctrine of respondeat superior. Section ____________________ 1346(b) of the Federal Tort Claims Act, which is a general waiver of sovereign immunity, seeks to permit just this type of action. It says: [T]he [federal] district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury . . . caused by the negligent or wrongful act or omission of any employee . . . while acting within the ________________________ scope of his office or employment, under ________________________________________ circumstances where the United States, ________________________________________ if a private person, would be liable to ________________________________________ the claimant in accordance with the law ____________ of the place where the act or omission occurred. 28 U.S.C. 1346(b) (emphasis added). But see 28 U.S.C. ________ 2680 (limiting the waiver in various ways). The Westfall Act goes on to create a type of respondeat superior immunity for federal employees that ____________________ roughly tracks the federal government's respondeat superior ___________________ -11- liability. The Westfall Act sets forth a Basic Statement of employee immunity which (edited to emphasize our point) says, [1] The remedy against the United States provided by section [] 1346(b) . . . _____________________ [2] for injury . . . arising or resulting from the negligent or wrongful act or omission of any employee . . . while acting within the scope of his ________________________________________ office or employment ____________________ [3] is exclusive of any other civil action . . . for money damages by reason of the same subject matter against the ____________________________ employee whose act or omission gave rise to the claim . . . . 28 U.S.C. 2679(b)(1) (emphasis added). Part 1 of this statement cross-references Section 1346(b)'s waiver of sovereign immunity. Part 2 uses language almost identical to that in Section 1346(b). And, Part 3's operative words granting immunity from actions seeking damages by reason of the "same subject matter" would therefore seem to refer, in a general way, to the respondeat superior circumstances ____________________ found in the kind of suit that Section 1346(b) describes. The Westfall Act subsection now before us uses similar language. It provides for substitution where the Attorney General certifies that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which -12- the claim arose . . . _________ 28 U.S.C. 2679(d)(1) (emphasis added). The language "acting within the scope of his office or employment" tracks the language of Section 1346(b). The reference to "the claim," appearing right after the Basic Statement, seems to refer to the Basic Statement's kind of claim. And, as we have said, the Basic Statement, in turn, refers to Section 1346(b), which creates liability if there is 1) an "injury" 2) "caused by" 3) an employee's "negligent or wrongful act or omission," where 4) the employee acted "within the scope of office or employment," and 5) "under circumstances" where state law would make a private employer liable for an employee's "act or omission." The federal government's liability under the Federal Tort Claims Act is not perfectly congruent with the federal employee's immunity under the Westfall Act. The sovereign immunity waiver contains exceptions and limitations that the Westfall Act does not contain (but outside of Section 1346(b)). See, e.g., United States v. _______ ___ ____ _____________ Smith, 111 S. Ct. 1180, 1185 (1991) (exception for torts _____ "arising in a foreign country," 28 U.S.C. 2680(k)); Kelly _____ v. United States, 924 F.2d 355, 362 (1st Cir. 1991) ______________ ("discretionary function" exception, 28 U.S.C. 2680(a)); -13- Nasuti v. Scannell, 906 F.2d 802, 805, 806 (1st Cir. 1990) ______ ________ (limitation for co-employee plaintiff, 5 U.S.C. 8116(c), and exception for assault and battery, 28 U.S.C. 2680(h)); Hamrick v. Franklin, 931 F.2d 1209, 1212 (7th Cir. 1991) _______ ________ (exception for libel and interference with contract rights, 28 U.S.C. 2680(h)). And, the federal government may escape liability under Section 1346(b), even if the employee is immune, by asserting state or federal law defenses. 28 U.S.C. 2674. Nonetheless, the language of the basic "government-liability-creating" and "employee-liability- removing" provisions makes clear that both sets of provisions involve the same basic kind of case, namely a ____ respondeat superior kind of case. And that fact is critical ___________________ here. Since Congress intended to limit grants of immunity to job-related, respondeat superior, kinds of cases, there ____________________ is no reason to apply the Westfall Act in cases that concededly do not involve any kind of potential respondeat ___ __________ superior liability. Nor, is there any reason to interpret ________ that Act as taking from the jury its traditional job of deciding whether an egregious tort (well outside the "scope of employment"), in fact, occurred. There is, then, no reason to give the statute before us other than its natural reading, a reading that -14- requires the Attorney General to assume (for immunity- ______ asserting purposes), not to deny, the occurrence of some ____ "incident" underlying the plaintiff's claim. The Attorney General need not deny the incident to obtain the kind of ____ job-related immunity the statute seeks to bestow. And, the Attorney General should not be able, by denying the ______ incident, to obtain employee immunity for a tort claim that is not job-related, regardless of whether the Attorney General believes the claim to be true or false. 3. Purpose. One can imagine why Congress _______ decided to link employee immunity to respondeat superior __________ ________ principles as described. Federal employee tort immunity has a public, not a private, objective, namely the need for public employees faithfully to discharge their duties. See ___ Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949); Barr ________ ______ ____ v. Matteo, 360 U.S. 564, 571 (1959); Westfall v. Erwin, 484 ______ ________ _____ U.S. 292, 296 (1988). It aims at avoiding "exposure" to "personal liability" in order to prevent "a substantial diminution in the vigor of Federal law enforcement and implementation." H.R. Rep. No. 700, 100th Cong., 2d Sess. 3, reprinted in 1988 U.S.C.C.A.N. at 5947. The resulting _____________ immunity reflects a balancing of judgments, on the one hand, about the likelihood that potential tort liability will -15- adversely affect job performance and, on the other, about the potential harm such immunity might cause potential tort plaintiffs. That balance may differ as between cases inside, and outside, the scope of employment. After all, one might believe that employees often can change their job performance to avoid, even unfounded, suits based on, say, negligent performance of that job, but that they lack a comparable ability to avoid, in a similar way, false charges of an egregious tort (e.g., murder or assault). And, the possible effect of such non-duty-related suits on job performance might seem too uncertain, or too weak, a justification for depriving a plaintiff of her right to a jury trial in cases involving non-duty-related egregious torts. Cf. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, ___ ____________________ ________ 53 (1989) (Congress may substitute statutory non-jury trial action for common law jury trial action where former "action inheres in, or lies against, the Federal Government in its sovereign capacity."). Hence, the statute, as enacted, simply reflects different Congressional judgments in different circumstances. As the dissent suggests, pp. 31, 34, infra, our _____ interpretation means that sometimes Driver A, who admits negligence will receive immunity, while less culpable Driver -16- B, who denies the existence of any accident at all, would not receive immunity. But, this could be so only where Driver A can claim that the underlying incident is job- related, while Driver B cannot make this claim, even hypothetically, for argument's sake. This result does not seem anomalous given immunity's job-related public purpose. And, it is that public purpose, not relative culpability, that controls the shape of the legal doctrine. -17- B History _______ The Westfall Act's history offers direct support for our reading of the Act. First, the House of Representatives Report suggests that Congress did not intend the Westfall Act to confer immunity for tort claims outside the respondeat superior context. It simply says that the ___________________ Act permits substitution of the United States for the defendant employee whenever the Attorney General determines that the act or omission alleged to have caused the claimant's injuries was within the scope of the employee's office or employment. H.R. Rep. No. 700, 100th Cong., 2d Sess. 9, reprinted in _____________ 1988 U.S.C.C.A.N. at 5952. The Report thereby seems to assume the Section 1346(b) elements of an act that caused an injury. Second, the Report says that the Act does not permit substitution where the conduct alleged is "egregious:" [T]he United States will incur vicarious liability only for . . . torts . . . committed within the "scope of . . . employment." If an employee is accused of egregious misconduct, rather than _____________________ mere negligence or poor judgment, then the United States may not be substituted as the defendant, and the individual -18- employee remains liable. Id. at 5, 1988 U.S.C.C.A.N. at 5949 (emphasis added). This ___ language suggests that the Act does not allow an immunity ___ certificate simply to deny, say, an alleged killing, rape, assault, or some other "egregious misconduct" that occurs during working hours. It suggests that the Act requires the certificate to explain, instead, why the alleged misconduct was not so "egregious" as to place it outside the employee's "scope of employment." The dissent's interpretation of the Act is inconsistent with this statement in the Report. Third, Congress intended the Westfall Act to restore approximately the federal employee tort immunity that existed prior to the Supreme Court case of Westfall v. ________ Erwin, 484 U.S. 292 (1988). See H.R. Rep. No. 700, 100th _____ ___ Cong., 2d Sess. 3-4 (1988), reprinted in 1988 U.S.C.C.A.N. _____________ 5945, 5946-47. We have examined the pre-Westfall Act cases. The leading immunity cases all involved "incidents" that defendants conceded to have occurred. Gregoire v. Biddle, ________ ______ 177 F.2d 579 (2d Cir. 1949); Barr v. Matteo, 360 U.S. 564 ____ ______ (1959); Westfall v. Erwin, 484 U.S. 292 (1988). And, in ________ _____ every other case we have found, the parties conceded or assumed for immunity-conferring purposes the occurrence of some kind of harm-causing "act or omission." We could find -19- no contrary example of either an ordinary or a __ "constitutional" tort case in which a claim of immunity rested on a denial that any incident occurred. See Chagnon ___ _______ v. Bell, 642 F.2d 1248, 1256 (D.C. Cir. 1980) ("doctrine of ____ immunity assumes official error"), cert. denied, 453 U.S. _______________________ _____________ 911 (1981); Scheuer v. Rhodes, 416 U.S. 232, 242 (1974) _______ ______ ("Implicit in the idea that officials have some immunity . . . is a recognition that they may err."); see also Heidelberg ________ __________ v. Hammer, 577 F.2d 429, 432 (7th Cir. 1978) (distinguishing ______ the defense of "absolute immunity" from "failure to state a claim"). Nothing in the Westfall Act's history suggests that Congress wanted to change the pre-existing practice in this respect. Fourth, the Westfall Act changed "official immunity" by overriding the Supreme Court's limitation of the doctrine to "discretionary functions," 484 U.S. at 296- 97, and by extending to all federal employees a procedural protection (the certification procedure) previously available only to government drivers. 28 U.S.C. 2679(d) (1982) (amended by the Westfall Act). The former purpose is irrelevant here. The latter offers added support, for Driver's Act immunity cases, like common law cases, turned on whether the "incident" (essentially an auto accident) -20- fell within the "scope of employment," not on whether any basic incident occurred. See, e.g., Henderson v. United ___ ____ _________ ______ States, 429 F.2d 588, 590 (10th Cir. 1970) (looking at "time ______ of the accident"). Moreover, those cases indicate that Driver's Act "immunity," like Westfall Act "immunity," arose in a respondeat superior context. See id. ___________________ ___ ___ We recognize that the Driver's Act tied employee immunity to the government's Section 1346(b), respondeat __________ superior liability more explicitly than does the Westfall ________ Act, for, in the context of removal, the Drivers Act said that if the federal court finds (before trial) that the plaintiff would have no Section 1346(b) remedy against the United States, the "case shall be remanded to the State court." 28 U.S.C. 2679(d) (1982). This language indicates that the Driver's Act would not have protected ___ drivers against claims of "egregious torts," whether or not they allegedly occurred during the driver's work hours. See ___ Henderson, 429 F.2d at 590 (state law respondeat superior _________ ___________________ principles define "scope of employment); Miller v. Federated ______ _________ Dep't Stores, 364 Mass. at 348, 304 N.E.2d at 579 _____________ (intentional tort is normally outside scope of employment unless committed to prevent victim interference with job performance); McGowan v. Williams, 623 F.2d 1239, 1242 (7th _______ ________ -21- Cir. 1980) ("the federal driver" can be sued "in his individual capacity" if he acted outside his scope of employment). The Westfall Act, while copying much Driver's Act language, leaves out this specific remand provision. But it apparently does so for a reason not here relevant, namely to make clear that the United States, after substitution, can assert various defenses that may, or may not, have been available to the employee. See 28 U.S.C. ___ 2674; H.R. Rep. No. 700, 100th Cong., 2d Sess. 5, reprinted _________ in 1988 U.S.C.C.A.N at 5948 ("ordinary tort defenses . . . __ available to the United States"). We therefore do not see how one could find much of significance in this difference. C Direct Precedent ________________ We have found one circuit court case and one district court case directly on point. In McHugh v. ______ University of Vermont, 966 F.2d 67 (2d Cir. 1992), the ______________________ plaintiff claimed that a federal employee had sexually harassed her. The Attorney General filed a Westfall Act certificate. The Second Circuit overruled the certificate because the Act does not permit the government to certify that the alleged incident is "within the scope of employment" simply "by denying that the acts occurred." Id. ___ -22- at 74. It added (as do we, in Part III) that the Government need not accept the plaintiff's version of the alleged _______ incident, for it can argue that the "context of the alleged acts" places them within the "scope of employment." Id. ___ The trial court, it explained, may hold a pre-trial evidentiary hearing to resolve factual disputes relevant to "context." Id. Our holding here essentially follows the ___ Second Circuit. In Jackson v. United States, 751 F. Supp. 911 (D. _______ _____________ Colo. 1990), the plaintiff alleged that the defendant, an Army psychotherapist had engaged in sexual intercourse with her during treatment. The district court held invalid a Westfall Act certificate that simply denied that the alleged event had taken place. See id. at 913. ___ ___ Language, context, history, and precedent lead to the same general conclusions. 1) The immunity that the Westfall Act confers upon federal employees arises in, and is confined to, a certain context, namely the "respondeat __________ superior" context, described roughly in Section 1346(b) of ________ the Federal Tort Claims Act. 2) To permit a Westfall Act certificate simply to deny that anything occurred would extend a form of this immunity well outside the "respondeat __________ -23- superior" context to "egregious" torts allegedly committed ________ at work. It would permit, to a significant degree, the Attorney General and district judge (rather than the jury) to decide whether allegations of such non-work-related torts were true or false. 3) We therefore conclude that the certificate cannot assert "immunity" simply by denying that anything occurred. We read the statute to mean what its words naturally say, namely that the Attorney General's certificate must assume the existence of an "incident out of which the claim arose." III What "Incident" Must the Certificate Assume? ___________________________________________ We are aware of one important question that we have not yet asked or answered. Given our interpretation, could a plaintiff, through artful pleading, transform a job- related tort into a non-job-related tort simply by alleging, say an "off-duty" state of mind (such as "malicious" intent) or by alleging that a negligent action was carried out intentionally? If so, will federal employees lose, in practice, the job-related immunity that Congress clearly intended the Westfall Act to provide? Consider, for example, an accident victim who might normally file a suit charging negligence. Suppose -24- that such a victim also claimed that the defendant employee acted with a state of mind that, under traditional respondeat superior doctrine, would place the action outside ___________________ the "scope of employment," say, an "intentional" or "deliberate" state of mind. See Miller v. Federated Dep't ___ ______ _______________ Stores, 364 Mass. at 348, 304 N.E.2d at 579 (intentional ______ tort is normally outside "scope of employment" unless committed to prevent victim interference with job performance). Or, suppose that the victim alleged detailed facts indicating that, at the time, the employee was on a "frolic of his own." Weiner v. Mairs, 234 Mass. 156, 158, ______ _____ 125 N.E. 149, 150 (1919). To force the Attorney General to accept all such facts as valid might often prevent her from removing the case from state court, from substituting the United States as defendant, and from freeing the employee from the burden of the lawsuit. This problem, however, does not require an interpretation that would permit the Attorney General to deny the basic "incident." Rather, we can (and do) insist that the certificate assume some kind of harm-causing ____________________________ incident, while leaving the Attorney General free to dispute ________ characterizations of the incident and subsidiary immunity- related facts. The Second Circuit held precisely the same -25- in McHugh. 966 F.2d at 74. Moreover, we previously held ______ that the Attorney General's certificate may contest a plaintiff's incident-describing and incident-characterizing facts and that the court may resolve any such factual conflicts, relevant to immunity, prior to trial. In Nasuti ______ v. Scannell, 906 F.2d 802 (1st Cir. 1990), the plaintiff, ________ injured while riding in the back of a government truck driven by federal employee Scannell, sued Scannell, claiming that Scannell had intentionally injured him by driving fast, _____________ thereby jostling him, and throwing him from side to side, "in spite of" Nasuti's "entreaties" to stop. We assumed that these factual allegations, if true, would have placed Scannell's actions outside the "scope of his employment." See Miller, 364 Mass. at 348, 304 N.E.2d at 579 (intentional ___ ______ torts normally outside "scope of employment"). But, we held the immunity certificate valid, pending a pre-trial evidentiary hearing that would resolve the key immunity- related factual dispute, namely whether Scannell intended to ________ harm Nasuti. See id. at 808. The Attorney General's ___ ___ certificate in Nasuti did not deny the existence of a harm- ______ causing incident. It denied related descriptions and characterizations of that incident. By way of contrast the certificate before us denies the existence of any harm- -26- causing incident at all. We recognize an obvious problem with the line that we, like the Second Circuit, have tried to draw. How clear is the line? Will we later have to answer questions in particular factual circumstances about the difference between denying facts that amount to a "characterization" or "description" and denying that any harm-causing incident occurred at all? Compare Unwin v. Campbell, 863 F.2d 124, _______ _____ ________ 133 (1st Cir. 1988) (extent of defendant's participation in incident is part of qualified immunity inquiry) with Domegan ____ _______ v. Fair, 859 F.2d 1059, 1065 (1st Cir. 1988) (denial of ____ causation is not part of immunity inquiry) and Bonitz v. ___ ______ Fair, 804 F.2d 164, 167 (1st Cir. 1986) (same), overruled on ____ ____________ other grounds, Unwin v. Campbell, 863 F.2d at 132. We ______________ _____ ________ concede this kind of administrative problem would likely not arise were we to read the statute either 1) as permitting the certificate to deny the "incident" in its entirety, or 2) as insisting that the certificate accept the plaintiff's alleged account as totally valid. But, we nonetheless believe the problem is the least potential evil. The administrative problem is not insuperable. Cases that raise this kind of issue seem rare. Moreover, we have already pointed out the more serious harm that would accompany -27- either of the other choices, namely unduly expanding, or constricting, the practical scope of the immunity that Congress intended to confer. And, we cannot find in this administrative consideration justification for imposing a major restraint upon the plaintiff's right to a jury trial. Consequently, we believe that our "middle ground" adheres more faithfully to the statute itself. -28- IV Other Matters _____________ We add two final, unrelated points. First, after oral argument in this case the Fourth Circuit decided Johnson v. Carter, No. 90-3077 (4th Cir., Jan. 15, 1993), in _______ ______ which it held that courts cannot review the validity of Westfall Act certificates. Id. at 7. We previously have ___ held to the contrary. Kelly v. United States, 924 F.2d at _____ _____________ 357; Nasuti, 906 F.2d at 812. The Government has asked us ______ not to assess our previous holding in respect to reviewability. And, we shall not do so. Second, the Government originally appealed a totally separate issue, whether or not federal law preempted certain of Wood's state law claims. The panel refused to consider that aspect of the appeal on the ground that an interlocutory appeal did not lie from the district court's decision of that question. See Zayas-Green v. Casaine, 906 ___ ___________ _______ F.2d 18, 22 (1st Cir. 1990). We have accepted the panel's decision on that matter in this en banc proceeding. Hence, we have not decided the preemption issue on the merits. The Government remains free to raise the issue on appeal from a final judgment. -29- Applying our basic determination of the law to the case before us, we find that the Government here, impermissibly, has rested its certificate simply upon a denial that any "incident" took place. We do not see how it could characterize the incidents at issue in a way that would bring them within defendant's "line of duty," and it has not tried to do so. We consequently believe that the district court's decision denying substitution and dismissal was correct, and that decision is Affirmed. ________ -30- COFFIN, Senior Circuit Judge, SELYA and BOUDIN, Circuit ____________________ _______ Judges, dissenting.1 In this case a federal employee ______ charged with an intentional tort said that the alleged incidents never occurred, and the Attorney General issued a "scope of employment" certificate under the Westfall Act, 28 U.S.C. 2679, accepting the employee's version of events. In our view, the Attorney General's scope of employment certificate must be respected unless and until set aside by the district court; and the certificate can be set aside only if the judge determines--in this case, after an evidentiary _____ hearing to decide whether the incidents occurred--that the employee engaged in improper conduct outside the scope of his employment. I. In the Westfall Act, Congress told the Attorney General to determine whether to certify that a federal employee, against whom a civil suit has been filed, was acting "within the scope of his office or employment at the time of the incident out of which the claim arose . . . ." 28 U.S.C. 2679(d)(1), (2). Where this certificate issues, the statute directs that the case, if initially brought in state court, shall be removed to federal court and in any event that "the United States shall be substituted as the party defendant." ____________________ 1This opinion represents the work, as well as the views, of all three judges so we have signed it jointly. -28- 28 Id. The statute makes the certificate "conclusive" so far __ as it is used to remove a case to federal court. Id. __ 2679(d)(2). The statute does not address, and thereby leaves open, the possibility that where the Attorney General grants a certificate, it may be reviewed so far as it substitutes the United States for the employee. On February 8, 1990, the U.S. Attorney for Massachusetts, who is delegated authority to issue such certificates, 28 C.F.R. 15.3, issued a Westfall Act certificate in this case affirming that Owens at all times referenced in the complaint was "acting with the scope of his office . . . ." The United States then substituted itself for Owens. Needless to say, the government has never claimed that the incidents, if they occurred as Wood alleged, would be behavior within the scope of Owens' duties. Rather, the certificate amounts to an assertion that Owens was at all times acting within the scope of his employment because, in _______ the Attorney General's view, the incidents did not occur as alleged by Wood. Accordingly, we now face a situation in which the Attorney General's delegate has issued a certificate and the plaintiff has sought to set it aside. One option--that of simply assuming the certificate to be true (and the complaint's allegations false)--we reject. This court has held that the grant of a scope certificate is reviewable as -29- 29 to substitution because any other reading could foreclose the plaintiff's claim without a judicial determination. Nasuti ______ v. Scannell, 906 F.2d 802 (1st Cir. 1990).2 The government, ________ after initially resisting such district court review, has now accepted its necessity. We are equally confident that the opposite alternative must be rejected: the district court cannot proceed merely by assuming the complaint's allegations to be true and the certificate false. Such an assumption would give the plaintiff complete control over the certification process and permit the certificate to be nullified without any judicial finding. The statute permits a certificate where "the defendant employee was acting within the scope of his office or employment at the time of the incident . . . ." In our view, this language speaks not to what plaintiff or defendant may allege but rather to the actual events and their ______ connection to the employee's office or employment. Finally, to us it is of no moment that the statute refers to "the incident out of which the claim arose." It is an accident of language--a reflection of the most common case--that the statute posits a "happening." In this case the Attorney General concluded, as evidenced by the certificate, that the events claimed by plaintiff did not ____________________ 2That is so, for example, where the Westfall Act mandates substitution but the tort is one for which the United States has not waived its sovereign immunity. -30- 30 occur, at least in the form alleged by Wood. But it is not difficult to find here a set of "incidents" or occurrences conceded by everyone: Owens did have a supervisory relationship with Wood, met and talked with her on various occasions and danced with her at an official function. What is disputed is precisely what was said and done on these occasions, much as a government driver and a private plaintiff might give two quite different versions of an accident. Indeed, we think the Westfall Act would apply even if there were less of an "incident" than is indisputably present ____ in this case. For example, surely the statute applies with the same force whether a postal service driver says that he did not hit the plaintiff's car or that he did so but was not at fault. "Incident," in other words, must encompass the possibility that something did not happen as well as the possibility that it did. Against this background, we confront a single question: should the judge or the jury make the initial determination as to what did or did not occur and its relationship to Owens' office or employment? The case is peculiar only because the same issue happens to be common both to the validity of the certificate and to the merits of the controversy between plaintiff and defendant. If Owens molested Wood, the certificate is invalid and he is liable; ___ -31- 31 if it never happened and he maintained a proper supervisor- employee relationship, then his behavior toward Wood was within the scope of his employment and he has no liability. ___ II. Although the question of who should decide is not free from doubt, we believe that the Attorney General's certificate cannot be set aside unless and until the district judge concludes that Wood's version of events is correct and therefore that Owens could not have been acting within the scope of his employment. This course appears to us to be the one most consistent with statutory language, with Congress' policy, with Supreme Court and other precedent, and with sound administration of the statute. Each of these points is addressed in turn. We start with the statute's language, as proper interpretation requires. See Landreth Timber Co. v. ___ ____________________ Landreth, 471 U.S. 681, 685 (1985). The Westfall Act ________ operates automatically, upon the filing of a certificate, to remove the case and to substitute the United States for the employee. The statute provides that "upon certification, [the] action . . . shall proceed" against the United States, 28 U.S.C. 2679(d)(4). The certificate, in other words, is an official act with legal consequences unless and until it is set aside. The official act is reviewable, by implication, but it is operative until found invalid, -32- 32 protected by the same presumption of validity that ordinarily attaches to official action. See Citizens to Preserve ___ ______________________ Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971); United _________________ _____ ______ States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 ______ __________________________ (1926). The certificate filed by the Attorney General in this case is not facially invalid. As we have noted, there is nothing in the statute that requires the Attorney General or the court to accept the plaintiff's version of events as true without scrutiny (and such a requirement would be sufficiently odd that a court could not lightly infer it). Nor is there anything that prevents a certificate from issuing where the "incident" charged in the complaint did not occur and the defendant engaged only in proper behavior occurring wholly within the scope of his office or employment. In sum, so far as the statute is concerned, this _______ is a proper certificate, unless and until a factual finding in Wood's favor undermines the premise of the certificate. It is even clearer that the congressional policies underlying the statute support the government's position. At present, Owens is not presumed to be a molester; he is a military officer who has been accused of making improper advances to an employee whom he supervised in the course of his official duties. To issue his certificate, the Attorney General must have concluded that in this case the advances -33- 33 were not made. Where the Attorney General has issued a scope certificate, Congress intended to spare employees not only from liability for misconduct related to their official duties but also from the burden and expense of defending such ____ suits.3 In other words, the Westfall Act is not a simple immunity statute saying that certain misconduct is protected against liability and leaving the employee to assert that immunity in litigation. Rather, by its precise terms and its underlying policy, the statute meant to lift the case into a federal forum and relieve the employee from the cost and effort of defending the case if the Attorney General issues __ the certificate.4 A certificate having issued in this case, surely Owens should not be deprived of the advantage of having the government defend the case, a protection that a negligent postal employee would gain as a matter of course. Turning to precedent, the Supreme Court has not yet ____________________ 3The Supreme Court has been equally concerned, in fashioning immunity doctrine, with "the general costs of subjecting officials to the risks of trial--distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." Harlow v. Fitzgerald, 457 U.S. 800, 816 ______ __________ (1982). 4The statute directs "substitution" of the United States for the defendant immediately upon issuance of the certificate, it removes the case if pending in state court, and it gives the defendant who is denied a certificate an immediate right to challenge this decision before the judge. 28 U.S.C. 2679(d)(1), (2), (3). See also H.R. Rep. No. ___ ____ 700, 100th Cong., 2d Sess. 2 (1988). -34- 34 addressed the issue in this case, but it has spoken recently and emphatically about the procedures for resolving immunity questions. The single thread that runs through these recent decisions is that immunity-related issues should be decided ________________________________________________ by the judge and at the earliest opportunity.5 It is, as _______________________________________________ the Supreme Court has said, not only immunity from ultimate liability after trial but also immunity from the burden of going to trial at all that matters. Mitchell v. Forsyth, 472 ________ _______ U.S. 511, 526 (1985). If the certificate in this case is invalidated without a factual finding, Owens will face the burden of going to trial even though the evidentiary hearing might show that at all times he conducted himself properly and within the scope of his office. As for circuit court precedent relating to the Westfall Act itself, our own Nasuti decision directly supports the ______ view that "where the facts underlying the scope certificate are disputed, . . . the matter [must] be independently resolved by the court . . . ." 906 F.2d at 813. Although a panel decision is not binding on an en banc court, we __ ____ continue to find the reasoning in Nasuti persuasive and do ______ ____________________ 5See, e.g., Hunter v. Bryant, 112 S. Ct. 534, 537 (1991) ___ ____ ______ ______ ("Immunity ordinarily should be decided by the court long before trial."); Siegert v. Gilley, 111 S. Ct. 1789, 1793-94 _______ ______ (1991) (same); Anderson v. Creighton, 483 U.S. 635, 646 n.6 ________ _________ (1987) ("qualified immunity questions should be resolved at the earliest possible stage"); Mitchell v. Forsyth, 472 U.S. ________ _______ 511, 526 (1985) (same); Davis v. Scherer, 468 U.S. 183, 195 _____ _______ (1984) (same); Harlow v. Fitzgerald, 457 U.S. 800, 818 ______ __________ (1982)(same). -35- 35 not think the case distinguishable from this one. Other circuits, in accord with Nasuti, have held or assumed that ______ the district judge may resolve facts that arise in the course of a challenge to a certificate. See, e.g., Schrob v. ___ ___ ______ Catterson, 967 F.2d 929, 936 (3d Cir. 1992); Brown v. _________ _____ Armstrong, 949 F.2d 1007, 1012 (8th Cir. 1991). _________ The only circuit "precedent" to the contrary is a very brief statement in McHugh v. University of Vermont, 966 F.2d ______ ______________________ 67 (2d Cir. 1992). With respect, this statement is buried at the end of a long opinion addressed to different issues and may well be qualified by the sentence that immediately follows. Id. at 74. It is by no means clear that the court __ thought it was deciding the issue presented in this case, and it certainly gave no reasons for deciding it one way or the other, which strongly reinforces the inference that it did not intend to decide the issue at all. Finally, while this is the least weighty of reasons, we think that the reading urged by the government is the one most consistent with sound administration of the statute. It seems quite likely that the evidentiary hearing before the district judge would be an efficient course: if Owens' version of events were accepted after the hearing, that finding would sustain the certificate and (by collateral estoppel) dispose of Wood's claim on the merits at the same time. If instead Wood's version were accepted, then we think -36- 36 Owens would similarly be bound by the result; he would be resubstituted as a defendant, and the case would proceed before a jury on other unadjudicated issues, such as the issue of damages.6 By contrast, under the majority's approach, district courts--and ultimately this court--will continue to engage in difficult, time-wasting controversies (like this one) about precisely which facts pertaining to the scope of employment ____________ issue are for the district judge and which are for the jury. Hair splitting distinctions and anomalous results will multiply.7 If Congress commanded this course, then it should be obeyed. But there is no reason to inflict these hardships upon ourselves and the judicial process when Congress' statute and its policy both look in the opposite direction. III. ____________________ 6If the employee is content to have the government substitute itself for him to defend his conduct, then we think that his interests and the government's are sufficiently aligned for collateral estoppel to operate against him. See Montana v. United States, 440 U.S. 147, 154 ___ _______ _____________ (1979) (one who assists in the prosecution or defense of an action in aid of some interest of his own is bound); Restatement (Second) of Judgments 39. 7For example, suppose Wood said she had been offensively touched but Owens said he touched her only accidentally as he was handing her a stack of correspondence. If the Attorney General then granted a certificate, there would be an "incident" and a clear scope of employment issue. Presumably the certificate could not be set aside without a district court factual finding. Why this case should follow a different procedural course is hard to understand. -37- 37 The arguments against the resolution we propose should be faced head on. The main adverse consequence, perhaps the only practical argument against our reading, is that it deprives the plaintiff of trial by jury on an issue that goes to the heart of the merits, as well as to the validity of the certificate. That common issue, turning directly on credibility in this case, may be well suited for jury resolution. This is not a small objection; the right to jury trial as at common law is preserved by the Seventh Amendment itself. While the Seventh Amendment ex proprio __________ vigore does not apply in this case, courts are protective of ______ jury trial, e.g., Pernell v. Southall Realty, 416 U.S. 363 ____ _______ _______________ (1974), and do not lightly read an ambiguous statute to cut off the opportunity of a litigant to obtain a jury.8 Yet under the Westfall Act the inevitable and deliberate effect of what Congress has done is to supplant the jury for __ all cases within the ken of that statute, including cases where the scope question goes to the heart of the merits. In the ordinary tort claim arising when a government driver negligently runs into another car, jury trial is precisely what is lost to a plaintiff when the government is substituted for the employee. Because claims against the ____________________ 8The Seventh Amendment does not apply because there is no constitutional right to a trial by jury against the United States. See Lehman v. Nakshian, 453 U.S. 156, 160 (1981). ___ ______ ________ Through the statute and the certificate, Congress has made this suit at present one against the United States. -38- 38 United States are not normally subject to jury trial, 28 U.S.C. 2402, neither the plaintiff's claim of negligence nor the question of damages is submitted to a jury. A case of "deliberate" harm, such as might arise if a prison guard or an FBI agent were sued for assault, could equally result in a bench trial on the merits. See 28 U.S.C. 2680(h). ___ Policy concerns would be quite different if the Attorney General's certificate were allowed to preclude any judicial adjudication of Wood's claim. However, the government has abandoned its earlier position (which we rejected in Nasuti) ______ that its certificate is conclusive and now disowns a recent circuit decision that reaches such a result, Johnson v. _______ Carter, 983 F.2d 1316 (4th Cir. 1993). Under our reading of ______ the statute, the plaintiff simply gets an adjudication on one issue by the trial judge instead of a jury, with adequate discovery and full opportunity to present and cross-examine witnesses, which is the way that plaintiffs normally proceed against the government. And given that substitution has occurred, this is a case against the government unless and __ until the certificate is set aside. With respect, the more technical arguments of the majority seem to us unpersuasive. In framing the Westfall Act, Congress no doubt had in mind the classic case in which "the wrongdoing" (if it occurred) was the type for which the government would be responsible under respondeat superior __________ ________ -39- 39 doctrine. But a claim of perfect symmetry between the certifiable conduct (under the Westfall Act) and government liability (under the Federal Tort Claims Act) is refuted, and definitively so, by United States v. Smith, 111 S. Ct. 1180 ______________ _____ (1991). Smith held that the Westfall Act immunizes the _____ employee for conduct within the scope of employment even if _______ there is no remedy against the United States. Id. at 1185. __ Accord, H. Rep. No. 700, supra, p. 6. ______ _____ Similarly, it seems to us beside the point that Congress plainly did not intend to grant immunity to employees who act egregiously. Owens has not been found to have molested _____ anyone; he is charged with misconduct, just as a postal _______ employee might be accused of negligent driving or an FBI agent of assault during the arrest of a suspect. If Owens is found by the district judge to have engaged in harassment, he will not have immunity and will be personally liable. Until that happens, the certificate affords him the procedural advantages of government substitution and representation. The majority also relies upon the House Report on the Westfall Act, which states that "[i]f an employee is accused of egregious misconduct, rather than negligence or poor judgment, then the United States may not be substituted as the defendant, and the individual employee remains liable." H. Rep. No. 700, supra, p. 5. There is no hint that Congress _____ meant to place any weight on the word "accused." From the -40- 40 prior and succeeding sentences, it appears that the House Report was simply assuring readers that the United States would not take on the burden of paying for the egregious torts of employees plainly committed outside the scope of employment. See id. That result will be achieved whether ___ ___ the judge or jury makes the initial determination of what happened. Finally, the majority's broadest but we think least persuasive argument is its intimation that Congress would be dismayed to discover that its statute applied to Owens. Certainly Congress would be shocked if harassment were held to be covered by official immunity, but no one is suggesting that it is. Congress could not be shocked to discover that its statute might apply where intentional harm was charged, since intentional harm clearly is covered in some cases.9 The reality is that Congress in this case, as with many statutes, probably did not think one way or the other about unusual applications, and it is an illusion to think that one knows just what Congress would have thought if it had faced the precise issue in this case. In such cases, the court's job is not to speculate about ____________________ 9Notably, the Federal Tort Claims Act itself waives the government's sovereign immunity for claims of assault, battery and false imprisonment by law enforcement officers. 28 U.S.C. 2679(h). It must be undisputed that an individual FBI agent, if sued for assault during an arrest, could obtain a valid Westfall Act certificate. -41- 41 legislative intent that never existed. Rather, our task is to piece out the statutory edifice as best we can, "giv[ing] coherence to what Congress has done within the bounds imposed by a fair reading of [the] legislation." Achilli v. United _______ ______ States, 353 U.S. 373, 379 (1957). And if Congress is ______ displeased when it sees how its general language and purpose have been fitted to the case, it is always open to Congress to refine its statute. Having stated our view as to what the statute requires, we want to make clear that the charge made by Wood against Owens is a very serious one involving--if the allegations are true- -multiple abuses of Owens' position as a government official as well as continuing sexual harassment. Nothing in this opinion should suggest that Wood's version of events is unsubstantial or implausible. We simply do not know: The Attorney General's certificate may be well founded or it may rest on a faulty factual premise. Our concern is simply to have the validity of the certificate and the correctness of its premise determined swiftly and at the outset, in accordance with Congress' statutory plan. For the reasons stated, we would vacate the order of the district court and remand the case for an evidentiary hearing to determine whether Owens, in his conduct vis a vis Wood, acted solely within the scope of his office or employment. -42- 42