13 F.3d 736
 62 USLW 2447
 James C. MELO, Jr.; Louis Jurik; Donald Ruggerio; Carol
Danowitz; James Dicosimo; Lucille Russell;
Walter W. Speelman; John Weikel
v.
Barbara HAFER and James J. West, Esquire,
James J. West, Esquire, and The United States*,
Appellants.
 No. 93-1193.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 9, 1993.
Decided Jan. 11, 1994.
Sur Petition for Rehearing Feb. 15, 1994.
 
 William Goldstein (argued), Groen, Laveson, Goldberg & Rubenstone, Bensalem, PA, for appellees.
 Stuart E. Schiffer, Acting Asst. Atty. Gen., Michael J. Rotko, U.S. Atty., Barbara L. Herwig, Peter R. Maier (argued), Dept. of Justice, Appellate Staff, Civ. Div., Washington, DC, for appellants.
 Before: STAPLETON, GREENBERG and ROTH, Circuit Judges.OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 This is an appeal from an order refusing to substitute the United States for James J. West, Esquire, under the Westfall Act.[1] The Westfall Act, also known as the Federal Employees Liability Reform and Tort Compensation Act, provides federal employees acting within the scope of their employment with absolute immunity from damage liability on state law tort claims. The Act accomplishes this by providing that the Federal Tort Claims Act supplies the only remedy against the United States for such claims, and that so long as any employee whose act or omissions gave rise to the plaintiff's claim was "acting within the scope of his [or her] office or employment," any other "civil action or proceeding for money damages ... against the employee ... is precluded." When a federal employee is sued for damages, the Attorney General of the United States may certify that the employee was acting within the scope of his or her office or employment and insist that the United States be substituted for the employee as the defendant.
 
 
 2
 The district court in this case determined that defendant West's acts, as alleged in the plaintiffs' complaint, did not fall within the scope of his employment as an Acting U.S. Attorney. West and the United States argue that the district court, before deciding the motion to substitute, should have conducted a hearing to determine whether the acts alleged in the complaint actually occurred. Because we conclude that a district court need not accept the allegations of the complaint as true when deciding a motion for substitution under 28 U.S.C. Sec. 2679(d)(1),[2] we will reverse.
 
 I.
 
 3
 The complete factual history of this case, which involves allegations of a conspiracy between West, the Acting U.S. Attorney for the Middle District of Pennsylvania, and Barbara Hafer during her successful election campaign for the office of Auditor General of Pennsylvania, was summarized by this Court in Melo v. Hafer, 912 F.2d 628 (3d Cir.1990), aff'd, --- U.S. ----, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("Melo I"). We focus here on the proceedings with respect to the plaintiffs' state law claims against West.
 
 
 4
 The plaintiffs, employees of the Office of Auditor General under Hafer's predecessors, filed a complaint alleging that West defamed them and interfered with their contractual relationships by providing Hafer with information indicating that they had been involved in a job-buying scheme. West thereafter filed a motion for summary judgment and an affidavit stating that, although he investigated plaintiffs in the course of his official duties and provided information about them to Donald Bailey, the Auditor General during Hafer's campaign, he did not provide the information about the plaintiffs to Hafer before she was sworn in as Auditor General following her successful campaign. West's affidavit incorporated a letter he had written to Hafer expressly declining to disclose to her information concerning his investigation. An affidavit of Barbara Hafer was also filed in which she denied having received information concerning the plaintiffs from West during her campaign and asserted that her knowledge of West's investigation came to her from other sources. Finally, an affidavit of Donald Bailey was filed in response to West's motion. Bailey swore that only he and two members of his staff knew the information West had conveyed and that they had not disclosed any portion of that information to any third party, including Hafer. Bailey suggested this meant Hafer's information must have come from West.
 
 
 5
 The Attorney General of the United States filed a motion under Sec. 2679(d)(1) to substitute the United States for West as the defendant with respect to the plaintiffs' defamation and interference with contractual rights claims. The certification accompanying the motion states:
 
 
 6
 1. I have read the amended complaint filed in this action and all attachments or exhibits thereto.
 
 
 7
 2. On the basis of the information presently available with respect to the occurrences referred to therein, defendant James J. West at all times relevant was acting within the scope of his employment as an employee of the United States.
 
 
 8
 App. 26.
 
 
 9
 The district court determined that it lacked authority to review this certification and granted the motion to substitute. The net effect of the substitution was the dismissal of the plaintiffs' state law claims because the United States has not waived its sovereign immunity with respect to claims of defamation and interference with contractual rights. 28 U.S.C. Sec. 2680(h).
 
 
 10
 In Melo I, we reversed the portion of the district court's order which substituted the United States for West. We held that a district court may review an Attorney General's Sec. 2679(d)(1) certification. 912 F.2d at 642.
 
 
 11
 When the case was returned to the district court, West renewed his motion for summary judgment on the merits. He and the United States also urged that the United States should be substituted as defendant because the affidavits of record established that he had not provided information about the plaintiffs to Hafer during her campaign and, accordingly, that he had acted at all times within the scope of his employment.
 
 
 12
 The district court concluded that, in considering the motion for substitution, it was required to accept as true the facts alleged by the plaintiffs in their complaint. The court distinguished between the facts alleged to give rise to liability, facts which are not subject to review by a court deciding a motion for substitution, and other facts relevant to whether the employee acted within the scope of his employment, facts which are reviewable by the court in that context. In drawing this distinction, the district court relied on the following portion of the court's opinion in McHugh v. University of Vermont, 966 F.2d 67, 74 (2d Cir.1992):
 
 
 13
 The allegations of tortious conduct ... should be read in the light most favorable to the plaintiff. That is to say, the government may not deny that acts were within the scope of employment by denying that the acts occurred. The context of the alleged acts that is relevant to the scope of employment issue is a matter of fact to be determined by the district court, however, after an appropriate factual hearing.
 
 
 14
 App. 106.
 
 
 15
 The district court then referred to our decision in Schrob v. Catterson, 967 F.2d 929 (3d Cir.1992), indicating that it could "best be understood as calling for a hearing only where there is a genuine factual dispute whether [the] acts [alleged in the complaint], assuming they occurred, fall within the scope of employment." App. 107. The court then called for a hearing, noting that the "powers, privileges, duties, and customary conduct of the U.S. Attorney, in particular as they relate to state political candidates and campaigns and ongoing investigations of state employees, [were] not matters of record." App. 108-09. The necessity of such a hearing was obviated, however, when the parties stipulated "that defendant West would not have been acting within the scope of his employment if, as alleged in the complaint, he had turned over a list of suspected job-buyers within the Auditor General's Office in order to assist Barbara Hafer in her political campaign for Auditor General." App. 111.
 
 
 16
 The district court denied the renewed motion to substitute "in light of the stipulation that giving the list of employees to defendant Hafer during her campaign--if such conduct occurred--would have exceeded the scope of a U.S. Attorney's employment." The court also denied West's motion for summary judgment on the merits without prejudice to its renewal after the completion of discovery. West and the United States appealed these decisions. As they now acknowledge, we lack jurisdiction to review the denial of West's motion for summary judgment.
 
 II.
 
 17
 We must first confirm that we have jurisdiction to review the district court's order denying the motion for substitution. That order did not terminate proceedings in the district court; nevertheless, we conclude that it is a final order under the collateral order doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and that we accordingly have jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 18
 In Aliota v. Graham, 984 F.2d 1350 (3d Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993), the plaintiffs sued several federal employees for defamation. The United States filed a certification that the defendants were acting within the scope of their employment when they engaged in the conduct in question, and the district court substituted the government for the defendants. Thereafter, however, the plaintiffs moved to strike the substitution of the United States, and the court permitted discovery on the scope of employment issue. Ultimately, the district court held that the defendants were not acting within the scope of their employment when they allegedly made the defamatory comments and entered an order striking the substitution, thereby reinstating the employees as the sole parties defendant.
 
 
 19
 On appeal, we held that the order striking the substitution and reinstating the employees as defendants was appealable under Cohen because the district court's determination represented its final word on substitution, was completely separate from the merits of the defamation action, would be effectively unreviewable on appeal from a final judgment, and involved a claim of right too important to be denied immediate review. Aliota, 984 F.2d at 1353-54.
 
 
 20
 Because we find the order we reviewed in Aliota to be the functional equivalent of an order denying substitution, we conclude that our decision on jurisdiction there controls the jurisdictional issue here.
 
 III.
 
 21
 As we have noted, we decided in Melo I that an Attorney General's scope of employment certification need not be accepted as establishing the proposition espoused therein; a plaintiff who has a basis for challenging the certification is entitled to judicial review of it. We had occasion to consider the extent of that review in Schrob v. Catterson, 967 F.2d 929 (3d Cir.1992). We ultimately held there that we lacked appellate jurisdiction to review a district court's "order denying a motion to substitute without prejudice, i.e., in anticipation of further discovery," because that order did not "conclusively determine" the defendant's immunity from trial on the plaintiff's claim. Id. at 937 (emphasis in original). In the course of our opinion, we made the following observations:
 
 
 22
 The scope certification is prima facie evidence that the employee's challenged conduct occurred within the scope of employment, but it is not conclusive. Thus, a plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it. If the facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion to substitute or to set aside the substitution based on the certification, pleadings, documentary evidence, and affidavits.
 
 
 23
 * * * * * *
 
 
 24
 On the other hand, if there is a genuine issue of fact material to the scope of employment question, the district court should permit discovery and conduct a hearing, if necessary. But the district court should ensure that both the discovery and the hearing are circumscribed as narrowly as possible, although these are matters within its discretion.
 
 
 25
 Schrob, 967 F.2d at 936.
 
 
 26
 It was not necessary for us to determine in Schrob whether a district court may conduct an evidentiary hearing and, on the basis of the evidence there tendered, resolve material disputes of fact as to whether the defendant engaged in the conduct alleged to give rise to liability. As the district court observed in this case, Schrob's holding is consistent with an approach to certification review under which the court accepts the allegations of the complaint as true, but engages in limited fact finding concerning the defendant employee's responsibilities and authority. Nevertheless, the opinion in Schrob suggests that the district court's authority is not so limited.
 
 
 27
 We discussed two cases in Schrob at some length: Brown v. Armstrong, 949 F.2d 1007 (8th Cir.1991), and Wood v. United States, 956 F.2d 7 (1st Cir.1992), opinion later withdrawn and, following rehearing in banc, superseded by 995 F.2d 1122 (1st Cir.1993) (in banc). Regarding Brown, we said:
 
 
 28
 While the courts have engaged in limited fact finding for the review, it has been recognized that a jury trial on the issue would frustrate Congress' intent to "protect federal employees from the uncertain and intimidating task of defending suits that challenge conduct within the scope of their employ." Brown, 949 F.2d at 1011. In furtherance of this principle, the court in Brown determined that, because prior to Westfall [v. Erwin, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988) ] questions of official immunity were resolved through summary judgment or dismissal early in the case, challenges to the scope certification "must be resolved before trial, as soon after the motion for substitution as practicable, even if an evidentiary hearing is needed to resolve relevant fact disputes." Id. at 1012.
 
 
 29
 Schrob, 967 F.2d at 935.
 
 
 30
 While these observations taken alone might arguably be consistent with the district court's view in this case, immediately following them, we discussed the Wood panel opinion, quoting with approval a passage in which the Wood court spoke of a district court's having to decide "the scope of employment issue, as the crux of the certification dispute, even though it is incidentally coextensive with the merits of the case." Schrob, 967 F.2d at 935 (quoting Wood 956 F.2d at 11-12).
 
 
 31
 The Wood panel opinion from which we quoted in Schrob was later withdrawn when the case was reheard in banc and the majority of the full court took a different view than that expressed in the quoted passage. 995 F.2d 1122 (1st Cir.1993) (in banc). Because the precise issue presented here was not presented in Schrob and because we now have the benefit of the insights of the in banc majority and dissent in Wood, we have taken a fresh look at the appropriate scope of a district court's review of a certification under 28 U.S.C. Sec. 2679(d)(1). Our analysis has convinced us that there are two distinct, primary issues for resolution. First, under Sec. 2679(d)(1), to what extent, if any, are an Attorney General, in making his or her certification, and a district court, in ruling on substitution, bound to accept the factual allegations upon which the plaintiff would predicate liability. Second, if the Attorney General and the court are not so bound, may the court grant substitution only in those instances where the plaintiff fails to come forward with competent evidence in support of its merits allegations, or may it grant substitution based on its own resolution of material disputes of merits facts.
 
 
 32
 In the in banc Wood opinions, the Court of Appeals for the First Circuit identified three possible approaches to resolving the issues presented when a plaintiff challenges the certification. Under the first approach, the court, after discovery and an evidentiary hearing where appropriate, decides all issues material to whether the defendant acted within the scope of his employment, including any disputed issues of fact pertaining to whether the allegations on which the plaintiff would predicate liability are true.[3] At the other end of the spectrum is an approach that requires the court to accept all of the factual allegations of the complaint as true and, after discovery and an evidentiary hearing where appropriate, determine any disputes of law or fact relevant to whether the defendant's conduct as alleged by the plaintiff is within the scope of the defendant's employment.[4] Although the court under this approach is bound to accept the plaintiff's allegations regarding the defendant's conduct, it is required, for example, to resolve any dispute about the nature of the defendant's job and authority. The third approach is an intermediate one. The court is to accept that "some kind of injury causing incident" occurred like that alleged in the complaint but need not accept the plaintiff's "characterization" or "description" of that incident. Wood, 995 F.2d at 1129. Under this approach, for example, the court is not required to accept the plaintiff's allegation concerning the defendant's state of mind. Where the defendant's conduct would be within the scope of his employment if he acted negligently but would be beyond that scope if he acted with intent to harm, the district court hears evidence and determines what the defendant's state of mind was at the relevant time.[5]
 
 
 33
 The third, hybrid approach, which the in banc court adopted in Wood, was fashioned expressly for the purpose of assuring that Congress' intent to spare federal employees the trouble and expense of trial would not be frustrated by "artful pleading." 995 F.2d at 1129. The court was concerned that an artful pleader could "transform a job related tort into a non-job related tort simply by alleging, say, an 'off-duty' state of mind (such as 'malicious' intent) or by alleging that a negligent action was carried out intentionally." Id. At the same time, the court candidly acknowledged an "obvious problem with the line that [it was trying] to draw:" "we [will] later have to answer questions in particular factual circumstances about the difference between denying facts that amount to a 'characterization' or 'description' and denying that any harm causing incident occurred at all." Id. On balance, however, the court was more concerned about the burden the artful pleader might be able to inflict on the congressionally conferred immunity than it was about the uncertainty it concededly was injecting into the law.
 
 
 34
 There is, we believe, a fourth approach that merits consideration. This approach would allow the Attorney General to certify that the defendant was acting within the scope of his or her employment based on an understanding of the merit facts different from that alleged by the plaintiff and would permit the court to grant substitution on that basis but only if the plaintiff has failed to come forward with competent evidence to support the allegations of the complaint. Thus, under this approach, the district court could, in effect, grant summary judgment to the employee on the basis of Westfall immunity. Where the plaintiff came forward with competent evidence of the facts alleged in the complaint, however, the court could not accept the Attorney General's certification based on its own determination that the facts were not as the plaintiff alleged them to be. While this approach, like the first approach, would not bind the Attorney General and the court to the plaintiff's version of the merit facts, unlike the first approach, it would preserve the plaintiff's right to a jury determination of the merit facts where there is a bona fide dispute regarding those facts.
 
 
 35
 With these four possibilities in mind, we turn to the statute and its legislative history. As we know from the statutory text and its history, the purpose of the Westfall Act is to assure that the decisions and conduct of federal public servants in the course of their work will not be adversely affected by fear of personal liability for money damages and of the burden of defending damage liability claims. Congress thus wished to grant immunity from both liability and litigation in those instances in which the employee was acting within the scope of his or her office or employment. At the same time, Congress wished to leave undisturbed the rights of those injured by federal employees who were not acting within the scope of their office or employment.
 
 
 36
 We know more specifically from the legislative history that Congress viewed the Westfall Act as substantially restoring the status quo that had existed before the Supreme Court's decision in Westfall v. Erwin, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). Prior to the Westfall case, federal employees had enjoyed absolute immunity under judge-made rules of immunity whenever they were acting within the scope of their employment. Westfall held that such judicially conferred immunity was available only when the employee's conduct was both within the scope of his or her employment and discretionary in nature. The Court held that the summary judgment granted by the district court on the basis of immunity could not stand because a "material issue of fact ... exist[ed] as to whether petitioner exercised sufficient discretion in connection with the alleged tort to warrant the shield of absolute immunity." 484 U.S. at 299, 108 S.Ct. at 585.
 
 
 37
 One of the things that disturbed Congress most about the Westfall decision was its effect on the availability to the defendant employee of summary judgment on grounds of immunity. This concern is reflected in the House Report:
 
 
 38
 [B]efore Westfall, most actions brought against Federal employees in their personal capacity were resolved through a summary judgment or dismissal early in the case. This early resolution of the case was possible because the employee could be shown to have been acting within the scope of employment, and therefore absolute immunity precluded recovery. Under Westfall, summary judgments and dismissals will no longer be readily available because the additional determination as to whether the employee exercised governmental "discretion" will always be a fact-based determination. Thus, the transaction costs (i.e. litigation costs) and length of time needed to resolve the issue of discretion in these cases will be substantially increased, as will the uncertainty for the individual employee who is sued.
 
 
 39
 H.R. No. 100-700, 100th Cong., 2nd Sess. 2 (1988), reprinted in 1988 U.S.C.C.A.N., 5945, 5946.
 
 
 40
 Because Congress intended to restore a particular status quo, we think it important to focus on how the federal courts were adjudicating immunity issues prior to Westfall. Accordingly, we turn to the established practices of the federal courts prior to 1988.
 
 
 41
 The immunity the Westfall Act was designed to restore was the absolute immunity from state law tort liability fashioned in cases like Barr v. Mateo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). The practice followed in resolving issues raised under that immunity doctrine was the same as that followed with respect to other immunity doctrines designed to serve similar ends, doctrines like that of absolute judicial immunity, absolute prosecutorial immunity, and qualified official immunity. Under that practice, entitlement to immunity was claimed by motion. If the defendant believed the facts alleged in the complaint entitled him to immunity, he or she filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and the court accepted those facts as true when resolving the immunity issue. See, e.g., Barr v. Mateo, supra; Venen v. Sweet, 758 F.2d 117, 119 (3d Cir.1985) (judicial immunity); Imbler v. Pachtman, 424 U.S. 409, 416, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976) (prosecutorial immunity); Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (qualified official immunity). If the defendant did not qualify for immunity on the facts alleged in the complaint, however, this did not mean the defendant had to go to trial. If the defendant believed that the plaintiff lacked evidence of facts that would place the claim beyond the shield of immunity, he or she was free to move for summary judgment on the basis of immunity under Fed.R.Civ.P. 56. If, after the summary judgment practice prescribed by that rule, the undisputed facts of record demonstrated entitlement to immunity, the Court would ignore the bare allegations of the complaint and grant summary judgment on grounds of immunity. As the Supreme Court explained the applicable procedure in Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), where Anderson, an FBI agent, claimed qualified official immunity from damage liability on an alleged constitutional tort:
 
 
 42
 The principles of qualified immunity that we reaffirm today require that Anderson be permitted to argue that he is entitled to summary judgment....
 
 
 43
 * * * * * *
 
 
 44
 Thus, on remand, it should first be determined whether the actions the [plaintiffs] allege Anderson to have taken are actions that a reasonable officer could have believed lawful. If they are, then Anderson is entitled to dismissal prior to discovery.... If they are not, and if the actions Anderson claims he took are different from those the [plaintiffs] allege (and are actions that a reasonable officer could have believed lawful), then discovery may be necessary before Anderson's motion for summary judgment on qualified immunity grounds can be resolved. Of course, any such discovery should be tailored specifically to the question of Anderson's qualified immunity.
 
 
 45
 483 U.S. at 641, 646-47, n. 6, 107 S.Ct. at 3039, 3042, n. 6. See also Kulwicki v. Dawson, 969 F.2d 1454, 1463 n. 11 (3d Cir.1992) (recognizing the availability of summary judgment based on absolute prosecutorial immunity); Pfeiffer v. Hartford Fire Insurance Co., 929 F.2d 1484 (10th Cir.1991) (affirming grant of summary judgment based on absolute prosecutorial immunity); Barbera v. Smith, 836 F.2d 96, 99-101 (2d Cir.1987) (same), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).
 
 
 46
 There are two important points to note about the way in which the federal courts, prior to Westfall, applied the immunity doctrines they had fashioned to shield public employees. First, as the Supreme Court stressed in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), if an immunity is an immunity from trial as well as liability, it was considered essential that summary judgment process be available to public officials in those cases where the plaintiff could tender no competent evidence of conduct beyond the scope of the immunity. Second, as the Supreme Court made clear in the above quoted portion of Anderson, the fact that the defendant needed to contest the plaintiff's merits allegations in order to show that he or she was entitled to immunity did not preclude summary judgment under pre-Westfall practice.
 
 
 47
 While motions to dismiss and summary judgment motions were available to the federal employee claiming absolute immunity in the pre-Westfall era, he or she was not entitled to have the judge resolve any material disputes of fact presented by the summary judgment record. In McSurely v. McClellan, 697 F.2d 309 (D.C.Cir.1982), for example, a prosecutor being sued for civil rights violations moved for summary judgment based on a claim of qualified prosecutorial immunity. The Court of Appeals affirmed the district court's denial of that motion, observing:
 
 
 48
 The court found that summary judgment was inappropriate because the McSurelys had offered to produce substantial evidence to establish that Ratliff should have known that his actions were illegal, and thus put material facts in dispute even under Harlow's objective inquiry. We agree.When considering a motion for summary judgment, a trial court's function is to ascertain whether disputed facts exist, not to try them....
 
 
 49
 Applying ... [summary judgment] principles to the instant case,[20] we find no abuse of discretion in the district court's denial of summary judgment....
 
 
 50
 697 F.2d at 320-21.
 
 
 51
 As we have noted, the legislative history of the Westfall Act reflects that Congress intended to return the substantive elements of immunity to their pre-Westfall state and that it was supportive of the pre-Westfall capacity of summary judgment practice to extricate a defendant entitled to immunity prior to trial. We also know from the text of the Act, however, that Congress did not leave pre-Westfall summary judgment practice undisturbed. It did not leave the immunity issue to the preexisting motion practice. Rather, Congress provided for an investigation by the Attorney General and for the filing of a certificate if the Attorney General concluded the employee acted within the scope of employment. Importantly, Congress also provided that, in the event the Attorney General declined to file such a certificate, "the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment," and that "[u]pon such certification by the court, [the case is] deemed to be an action ... brought against the United States." 28 U.S.C. Sec. 2679(3). Thus, while it is important to appreciate that Congress approved the availability of a summary judgment of immunity under a pre-Westfall practice, it does not follow that Congress intended a return to that practice without change.
 
 
 52
 We find nothing in the text or legislative history of the Act suggesting that Congress intended to restrict district courts to the facts alleged in the plaintiff's complaint when deciding substitution motions. A fortiori, we find nothing there suggesting that district courts be limited to the "core" facts alleged but not the "descriptive" ones. More importantly, based on Congress' approval of the effects of pre-Westfall summary judgment practice, we decline to attribute to Congress an intent to make pre-trial substitution less available to a defendant employee than was a summary judgment on grounds of immunity under pre-Westfall practice. We therefore respectfully disagree with the Wood court and conclude that the Attorney General may file a scope of employment certificate based on a finding that the defendant did not engage in the conduct alleged by the plaintiff, and that the court may grant substitution if the plaintiff fails to come forward with competent evidence of the alleged conduct. As we have noted, pre-Westfall practice made summary judgment available despite the existence of an overlap between the facts relevant to immunity and those relevant to the merits. We are confident that Congress did not intend the Westfall Act to make substitution less available.
 
 
 53
 Our conclusion that inquiry into merits facts is not precluded leaves us with a choice between the first approach, which gives the district court the authority to resolve all disputed issues of fact and law relevant to the scope of employment issue, and the fourth approach, which is modeled on traditional summary judgment practice and does not allow the court to resolve any material disputes of fact. Like the dissent in Wood, we choose the former.
 
 
 54
 We believe that Congress, familiar as it clearly was with summary judgment practice, would not have worded Sec. 2679(d)(3) as it did if it intended that substitution would be unavailable in all cases where a summary judgment on grounds of immunity would be inappropriate, i.e., where there is a dispute of fact material to the scope of employment issue. That section, it will be recalled, gives the employee the right to insist "at any time before trial" that the court "find and certify that [he or she] was acting within the scope of his office or employment." This directive that the court "find" prior to trial whether the defendant is immune is not limited to cases in which the material facts are undisputed. We, like the Court of Appeals for the Ninth Circuit, read this as a directive that, where necessary, the court conduct an evidentiary hearing and make all findings necessary to a determination of the scope of employment issue. See Wang v. United States, 947 F.2d 1400 (9th Cir.1991) (employee defendant entitled to an evidentiary hearing under Sec. 2679(d)(3) on scope of employment issue). Since Congress could not have intended an employee supported by an Attorney General's certification to have less access to pretrial substitution than an employee not so supported, we conclude that West is entitled to a pre-trial evidentiary hearing and determination as to whether he supplied Hafer, during her campaign, with information concerning the plaintiffs.
 
 
 55
 In reaching this conclusion, we are mindful of the fact that the plaintiffs, under pre-Westfall practice, would have been entitled to a jury trial if, after discovery on the scope of employment issue, they had been able to come forward with competent evidence that West supplied the information to Hafer.[6] We acknowledge that there is nothing in the text of the Act or its legislative history which demonstrates that Congress focused on the Act's potential impact on the jury trial right of plaintiffs so situated. Nevertheless, we think it clear from Sec. 2679(d)(3) that Congress intended federal employees to have a right to a court determination of all aspects of the immunity issue prior to trial.[7]
 
 IV.
 
 56
 In summary, we hold that the Attorney General may file a certification under Sec. 2679(d)(1) whenever he or she concludes that an employee defendant was acting within the scope of his or her employment at the relevant time or times. This may include cases in which the plaintiff alleges conduct which is beyond the scope of the defendant's employment, but which the Attorney General determines did not occur.
 
 
 57
 The Attorney General's certification should state the basis for his or her conclusion. If this is done, the certification will focus the subsequent proceedings on the motion for substitution and the certification can be given the prima facie effect in those proceedings that Congress intended it to have.
 
 
 58
 If the Attorney General's certification is based on a different understanding of the facts than is reflected in the complaint, the plaintiff should be permitted reasonable discovery and should then be called upon to come forward, as if responding to a motion for summary judgment, with competent evidence supporting the facts upon which he would predicate liability, as well as any other facts necessary to support a conclusion that the defendant acted beyond the scope of his employment. If the plaintiff fails to tender such evidence, the statute requires that substitution be ordered.
 
 
 59
 If the plaintiff does come forward with competent evidence that would permit a conclusion contrary to that found in the certification, the defendant and the government, after discovery if desired, are entitled to an evidentiary hearing at which both sides will tender their evidence on all disputes material to the scope of employment issue. Thereafter, the district court will resolve all issues of fact or law relevant to that issue and will find that the defendant did or did not act within the scope of his or her employment. If the court's finding favors the defendant, substitution must be granted. If the court determines that the defendant did not act within the scope of his or her employment, the case will proceed against the defendant employee.[8]
 
 V.
 
 60
 The order of the district court denying substitution will be reversed and this case will be remanded to the district court for further proceedings consistent with this opinion.
 
 SUR PETITION FOR REHEARING
 February 15, 1994
 
 61
 Before: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, and ROTH, Circuit Judges.
 
 
 62
 The petition for rehearing filed by appellees in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 
 *
 Pursuant to Rule 12(a), FRAP
 
 
 [1]
 The Westfall Act, 28 U.S.C. Sec. 2679, provides, in part:
 (b)(1) The remedy against the United States provided by [the Federal Tort Claims Act] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.
 (2) Paragraph (1) does not extend or apply to a civil action against an employee of the Government--
 (A) which is brought for a violation of the Constitution of the United States, or
 (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.
 (c) The Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government or his estate for any such damage or injury.
 (d)(1) Upon certification by the Attorney General that the defendant employee was acting in the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such a claim in the United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.
 (d)(3) In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.
 
 
 [2]
 See fn. 1, supra
 
 
 [3]
 This approach was endorsed by the dissent in Wood v. United States, 995 F.2d 1122, 1133 (1st Cir.1993) (in banc) (Coffin, Selya, Boudin, JJ., dissenting)
 
 
 [4]
 This approach was identified and rejected by the in banc opinion in Wood, 995 F.2d at 1129. It is, of course, the approach taken by the district court in this case
 
 
 [5]
 This intermediate approach has been the rule in the First Circuit since Wood and may be the rule in the Second Circuit. See McHugh v. University of Vermont, 966 F.2d 67, 74 (2d Cir.1992)
 
 
 [20]
 Harlow does not purport to change the operation of Rule 56 in immunity cases. The Harlow Court discarded the subjective aspect of the good faith defense to avoid routine conflict with the rigors of Rule 56. This significantly reduces the potential for factual disputes; however, such disputes may arise even under the objective test. Whether an official should have known that his actions violated the law--the example postulated in Harlow--can be judged without recourse to the trier of fact when the question essentially is one of law. However, when there is a genuine issue of fact--for example, what a reasonable person in like circumstances should have known--Rule 56 compels a trial
 
 
 [6]
 We have no occasion to comment on whether the present record creates a material dispute of fact on that issue
 
 
 [7]
 The Westfall Act, as we construe it, will not, of course, deprive the plaintiffs of a right to a jury determination of the merits of their claim if it is determined that West is not immune
 
 
 [8]
 If the court, in the course of determining the substitution issue, necessarily finds facts that are part of the plaintiff's case on the merits, the defendant may be estopped from disputing those facts at trial. See Wood v. United States, 995 F.2d 1122, 1136 (1st Cir.1993) (in banc) (Coffin, Selya and Boudin, JJ., dissenting). This issue has not been briefed by the parties in this case, however, and we express no opinion with respect to it